# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX
OCT 15 2012
CLERK

SUPERIOR COURT
CIVIL ACTION NO.:

12-1090

LANCE MARTIN, TOBY MARTIN
and All Other Persons Similarly Situated,
                 Plaintiffs

v.

NEW ENGLAND COMPOUNDING,
PHARMACY, INC.,      Defendant

2569A000010/15/12CIVIL    480.00
2569A000010/15/12SURCHARGE  15.00
2569A000010/15/12SECC     20.00

## COMPLAINT FOR CLASS ACTION

### I. PARTIES

1. The Plaintiff Lance Martin is an adult resident of the State of Maryland, currently residing at 7938 Winterset Avenue, Baltimore, Maryland 21208.

2. The Plaintiff Toby Martin is an adult resident of the State of Maryland, currently residing at 7938 Winterset Avenue, Baltimore, Maryland 21208.

3. The Plaintiff Toby Martin has, at all relevant times, been lawfully married to the Plaintiff Lance Martin and brings her claims as a consortium Plaintiff.

4. The Defendant, New England Compounding Pharmacy, Inc. ("NECC") is a Massachusetts domestic for-profit corporation with a principal place of business located at 697 Waverly Street, Framingham, MA 01701, County of Middlesex.

5. NECC's resident agent for the service of process is Gregory Conigliaro, with a principal place of business and office located at 697 Waverly Street, Framingham, MA 01701, County of Middlesex.

### II. FACTS COMMON TO ALL COUNTS

6. NECC is engaged in interstate commerce throughout the United States and provides products and services, in the distribution of various drug and pharmaceutical compounds, including Methylprednisone Acetate, a prescription

steroidal medication provided in liquid form and then requiring an injection for administration.

7. At various and diverse times herein, NECC distributed Methylprednisone Acetate in its liquid form contained in a vial that was contaminated with a fungal agent to wit Aspergillus and other fungal agents, which was capable of producing spinal meningitis.

8. Spinal meningitis is an infection of the meninges located in the spinal cord and central nervous system which may have devastating health effects, including death, significant infection, and significant effects upon body functions and systems.

9. On September 10, 2012, Mr. Martin received an injection of Methylprednisone Acetate at the Greenspring Surgery Center, 2700 Querry Lake Drive, Baltimore, MD 21209.

10. On October 4, 2012, the United States Food and Drug Administration and the Center for Disease Control issued a recall alert to the members of the public stating the NECC had distributed several lots of Methylprednisone Acetate that had been placed in commerce by the Defendant New England Compounding were contaminated with Aspergillus fungus.

11. Upon information and belief, these compounded medications have been distributed throughout various places within the United States and throughout the various states of the United States.

12. Upon information and belief, approximately sealed 18,000 vials of Methylprednisone Acetate (placed in commerce by NECC) were subject to this recall.

13. The FDA and its inspectors have observed fungal contamination by direct microscopic examination of foreign matter taken from a sealed vial at Methylprednisone Acetate collected from NECC.

14. Mr. Martin was notified by Greenspring Surgery Center that he was exposed to the contaminated compounded medication propounded by NECC.

15. On October 5, 2012, the CDC and FDA recommended that all physicians, and healthcare professionals cease use of and remove all NECC products, including Methylprednisone Acetate.

16. Upon information and belief, over 13,000 patients, including the Plaintiff Lance Martin, were injected with contaminated compounded Methylprednisone Acetate from the affected lots, thus exposing Mr. Martin and other persons similarly situated to the risk of fungal spinal meningitis.

17. This action is brought by the Plaintiffs on behalf of themselves and all other persons similarly situated whose joinder in this class in impractical for the following reasons:

    a. According to reports, there appears to be in excess of 13,000 individuals who have been exposed to the contaminated medications distributed by the NECC over many states and territories within the United States; and

    b. there are questions of law and fact common to the class in the following respects, including but not limited to: common issues related to the production, inspection and distribution of the contaminated Methylprednisone Acetate marketed and sold by NECC; common issues related to the conduct of NECC in the quality and control of the production of its medications; common issues related to the distribution of the offending product; common issues related to injuries or claims suffered by the Plaintiffs, including the risk of meningitis, the emotional distress suffered as the result of said risk, and common issues regarding the necessity for continued medical treatment and monitoring for all class members.

18. The claims of the Plaintiffs Lance Martin and Toby Martin are representative and typical of the claims of the class to whom they seek to represent in that Mr. Martin was exposed by injection to the contaminated Methylprednisone Acetate sold, marketed and distributed by NECC and that he has undergone emotional distress and suffering as a result of said exposure, and requires medical monitoring as a result of said exposure and that Mrs. Martin, as his wife, has sustained a loss of consortium as a result of said exposure to her husband.

19. The representative parties will fairly and adequately protect the interests of the class in the following respects: they will vigorously pursue a lawsuit within the Commonwealth of Massachusetts and have standing and jurisdiction to file same.

20. These common questions of fact are more present in this action to predominate over individual issues and the action is best managed as a class action because the actions in common with the Defendant have effected a wide number of plaintiffs spread throughout the country, this making individual claims unduly burdensome to resolution and fought with difficulties and consistent results.

### Count I
### Lance Martin, and All Other Persons Similarly Situated, vs. NECC
### (Negligence)

21. Paragraphs 1-20 are hereby re-alleged and incorporated by reference as if set forth fully herein.

3

22. NECC, as the designer, manufacturer, marketer, advertiser and distributor of the compounded, contaminated Methylprednisone Acetate, was careless, reckless and negligent in the compounding, testing, inspection, manufacture, sale and marketing of the Methylprednisone Acetate, by causing, permitting and allowing the fungal contamination of the Methylprednisone Acetate, thus rendering the product defective, unfit and/or unreasonably dangerous to end users or consumers, including Mr. Martin and all other persons similarly situated.

23. The negligence of NECC includes, but is not limited to the following: in failing to properly and adequately compound and manufacture Methylprednisone Acetate in a safe and sterile environment; in failing to ensure that the Methylprednisone Acetate was sufficiently safe, adequate and proper, in light of reasonably intended and foreseeable uses; in failing to provide a sterile compounding environment; in failing to utilize proper inspection techniques; in failing to utilize proper sterilization and compounding procedures in the production and inspection of the product; in failing to take all steps necessary to avoid the contamination of the Methylprednisone Acetate and was otherwise negligent.

24. In addition, the negligence of NECC, as inspector, distributor, marketer, tester and seller of the contaminated Methylprednisone Acetate, consisted of the failure to properly inspect and/or test the lots of Methylprednisone Acetate prior to distribution, thus causing, permitting and allowing the product to be unfit, unsafe and/or unreasonably dangerous to end users, including Mr. Martin and all other persons similarly situated.

25. The negligence of NECC was a proximate cause and/or substantial contributing factor of the incident of September 10, 2012 and the injuries and damages suffered by Mr. Martin and all other persons similarly situated, and was, in no way, the responsibility of the Plaintiff or all other persons similarly situated.

26. As a direct result of the negligence of NECC, Mr. Martin and all other persons similarly situated suffered serious personal injuries and damages consisting of, but not limited to the following: past, present and future medical bills and expenses, emotional distress and upset, limitations in vocational, family and avocational activities, severe mental pain and anguish, past lost income, future lost income, loss of earning capacity, diminished work life expectancy, inability to engage in many ordinary and customary activities, loss of enjoyment of life, a marked and permanent decreased in quality and enjoyment of life, and all other damages recognized under law and statute.

WHEREFORE, the Plaintiff, individually and on behalf of all other similarly situated, demands judgment against NECC in an amount determined by this Court to be just and reasonable, including interest, attorneys' fees and costs, if applicable.

*PLAINTIFF CLAIMS TRIAL BY JURY.*

## Count II
## Lance Martin and All Other Persons Similarly Situated, v. NECC
## (Breach of Implied Warranties)

27. Paragraphs 1-26 are hereby re-alleged and incorporated by reference as if set forth fully herein.

28. NECC impliedly warranted that its product was safe, free of defects, merchantable and fit for its intended purpose, pursuant to the UCC 2-314, 2-315, 2-316 et seq.

29. As set forth above, the compounded, contaminated Methylprednisone Acetate in a sealed container vial was not safe, was unfit, was not free of defects and was not of merchantable quality for the reasons stated above.

30. Mr. Martin and all other persons similarly situated reasonably relied upon the compliance of NECC, its subsidiaries, marketers, advertisers, agents, servants and employees to these implied warranties, all to his detriment and loss.

31. The violation of theses warranties was a proximate cause and substantial factor in the causing and producing the incident of September 10, 2012.

32. As a direct result of the breach of implied warranties of NECC, Mr. Martin and all other persons similarly situated suffered serious personal injuries and damages consisting of, but not limited to the following: past, present and future medical bills and expenses, emotional distress and upset, limitations in vocational, family and avocational activities, severe mental pain and anguish, past lost income, future lost income, loss of earning capacity, diminished work life expectancy, inability to engage in many ordinary and customary activities, loss of enjoyment of life, a marked and permanent decreased in quality and enjoyment of life, and all other damages recognized under law and statute.

WHEREFORE, the Plaintiff, individually and on behalf of all other persons similarly situated demands judgment against NECC in an amount determined by this Court to be just and reasonable, including interest, attorneys' fees and costs, if applicable.

*PLAINTIFF CLAIMS TRIAL BY JURY.*

### Count III
### Lance Martin and All Other Persons Similarly Situated, v. NECC
### (Breach of Express Warranties)

33. Paragraphs 1-32 are hereby re-alleged and incorporated by reference as if set forth fully herein.

34. Through its statements, advertisements, promotions, marketing, product brochures and product information, NECC expressly warranted and represented to members of the public, including Mr. Martin and all other persons similarly situated that its Methylprednisone Acetate was safe, free of defects and reasonably fit for its intended uses.

35. The contaminated Methylprednisone Acetate distributed by NECC was not safe, was not fit and was not free of defects for the reasons stated above.

36. Mr. Martin and all other persons similarly situated reasonably relied upon these representations and expressions of NECC, its subsidiaries, marketers, advertisers, agents, servants and employees, all to his detriment and loss.

37. The violation of theses warranties was a proximate cause and substantial factor in the causing and producing the incident of September 10, 2012.

38. As a direct result of the breach of express warranties by NECC, Mr. Martin and all other persons similarly situated suffered serious personal injuries and damages consisting of, but not limited to the following: past, present and future medical bills and expenses, emotional distress and upset, limitations in vocational, family and avocational activities, severe mental pain and anguish, past lost income, future lost income, loss of earning capacity, diminished work life expectancy, inability to engage in many ordinary and customary activities, loss of enjoyment of life, a marked and permanent decreased in quality and enjoyment of life, and all other damages recognized under law and statute.

WHEREFORE, the Plaintiff, individually and on behalf of all other persons similarly situated demands judgment against NECC in an amount determined by this Court to be just and reasonable, including interest, attorneys' fees and costs, if applicable.

*PLAINTIFF CLAIMS TRIAL BY JURY.*

## Count IV
### Lance Martin and All Other Persons Similarly Situated, v. NECC
### (Breach of Warranty of Fitness for Purpose Intended)

39. Paragraphs 1-38 are hereby re-alleged and incorporated by reference as if set forth fully herein.

40. NECC warranted that its Methylprednisone Acetate was fit and reasonably used for the purpose for which it was intended.

41. NECC's contaminated Methylprednisone Acetate was not fit for the purpose for which it was intended for the reasons stated above.

42. Mr. Martin and all other persons similarly situated reasonably relied upon the compliance of NECC with this warranty, its subsidiaries, marketers, advertisers, agents, servants and employees to this warranty, all to his detriment and loss.

43. The violation of this warranty was a proximate cause and substantial factor in the causing and producing the Mr. Martin and all other persons similarly situated suffered serious personal injuries and damages consisting of, but not limited to the following: past, present and future medical bills and expenses, emotional distress and upset, limitations in vocational, family and avocational activities, severe mental pain and anguish, past lost income, future lost income, loss of earning capacity, diminished work life expectancy, inability to engage in many ordinary and customary activities, loss of enjoyment of life, a marked and permanent decreased in quality and enjoyment of life, and all other damages recognized under law and statute.

WHEREFORE, the Plaintiff, individually and on behalf of all persons similarly situated, demands judgment against NECC in an amount determined by this Court to be just and reasonable, including interest, attorneys' fees and costs, if applicable.

*PLAINTIFF CLAIMS TRIAL BY JURY.*

## Count V
### Toby Martin and All Other Persons Similarly Situated v. NECC
### (Loss of Consortium)

44. Paragraphs 1-43 are hereby re-alleged and incorporated by reference as if set forth fully herein.

45. At the time of the occurrence and at all relevant times, Toby Martin was lawfully married to Lance Martin.

46. As a result of the negligence and breach of warranties of NECC in the compounding, manufacture, inspection, distribution and sale of Methylprednisone Acetate, as stated above, Mr. Martin has been seriously injured.

7

47. The aforementioned incident was caused solely and exclusively by reason of the negligence and breach of warranties of NECC, and was caused in no manner whatsoever by any act or failure to act on the part of the Plaintiffs.

48. As a result of the negligence and breach of warranties of NECC, Mrs. Martin suffered damages, including loss of services, society, companionship, consortium, acts of love and affection, household services, family services, and suffered mental anguish, pain and suffering.

49. As a further result of the negligence and breach of warranties of the Defendants, Mrs. Martin was put to great expense for medicine, medical attention and nursing.

50. As a further result of the negligence and breach of warranties of NECC, Mrs. Martin has undergone great pain and mental anguish, and will continue to suffer same for an indefinite time in the future due to injuries to the Plaintiff.

51. As a further result of the negligence and breach of warranties of the Defendants, Mrs. Martin and all other persons similarly situated will for an indefinite time in the future be obliged to expend various and diverse sums of money in and about an effort to cure their spouse of the injuries they have suffered, all to their great detriment and loss.

WHEREFORE, Mrs. Martin, individually and on behalf of all other persons similarly situated, demands judgment against NECC in an amount determined by this Court to be just and reasonable, including interest, attorneys' fees and costs, if applicable.

*PLAINTIFF CLAIMS TRIAL BY JURY*

The Plaintiffs,
By their attorneys,

SHEFF LAW OFFICES, P.C.

Douglas K. Sheff, BBO # 544072
Donald R. Grady, Jr. BBO #544841
Joseph N. Magner, BBO #678599
10 Tremont Street, 7th Fl.
Boston, MA  02108
617-227-7000

_____
K. William Kyros, BBO# 634442
Law Offices of K. William Kyros
17 Miles Road
Hingham, MA 02043
1-800-934-2921

Dated: 10-15-12